FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 11, 2021

SEAN F. McAVOY, CLERK

1

2

3      UNITED STATES DISTRICT COURT
       EASTERN DISTRICT OF WASHINGTON
4

5   UNITED STATES OF AMERICA,              No.   2:20-cr-00094-SMJ-1

6                        Plaintiff,

7              v.                          **ORDER GRANTING
                                          DEFENDANT'S MOTION TO
8   MARTHA OFELIA NARANJO-                 SUPPRESS**
    CISNEROS,
9
                         Defendant.
10

11          In a related case, Defendant Jose Contreras-Aguilar sold drugs to a

12  confidential informant, and officers afterward followed him to a house in Warden,

13  Washington. *See generally United States v. Contreras-Aguilar*, No. 2:20-cr-0092-

14  SMJ. The lead detective then obtained and executed a search warrant on that home.

15  The initial warrant authorized the search and seizure of (1) Contreras-Aguilar, (2)

16  the prerecorded "buy money" used in the transaction, and (3) documents tending to

17  establish dominion and control of the location to be searched and of any items to be

18  seized. But during the search, officers also found guns, drugs, money, and other

19  contraband; the lead detective thus obtained an amended warrant for these items.

20  The searched residence belonged to Defendant Martha Ofelia Naranjo-Cisneros.

ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS – 1

During the execution of the search warrants, officers obtained incriminating statements from Naranjo-Cisneros and found contraband, including a handgun, linked to her.

Naranjo-Cisneros moves to suppress all evidence, challenging the warrant on Fourth Amendment grounds, and cites this Court's ruling in *Contreras-Aguilar*. ECF No. 38, 42. The Government opposes the motion. ECF No. 40. The parties stipulated to incorporate the record developed in *Contreras-Aguilar* and requested that the Court decide Naranjo-Cisneros's motion without further testimony or argument. ECF Nos. 44, 45.

For the reasons discussed in *Contreras-Aguilar* and supplemented below, this Court grants Naranjo-Cisneros's motion to suppress.

## BACKGROUND

In 2018, a confidential informant ("CS-1") notified Moses Lake Police Department ("MLPD") Detective Curt Ledeboer that Contreras-Aguilar was trafficking narcotics in Grant County, Washington. ECF No. 40-1 at 2. At Detective Ledeboer's direction, CS-1 bought drugs from Contreras-Aguilar. *Id*. But before Detective Ledeboer could complete his investigation, Contreras-Aguilar turned himself in on an outstanding DUI warrant, and immigration authorities apparently removed him from the United States. *See id*.

About two years later, in January 2020, a different confidential informant

("CS-2") notified Detective Ledeboer that the Contreras-Aguilar had returned to Washington and had resumed trafficking narcotics. *See id*. Detective Ledeboer set up another controlled buy, once again targeting Contreras-Aguilar. *See id*. Officers gave CS-2 prerecorded buy money, which CS-2 then used to buy methamphetamine from Contreras-Aguilar. *Id*. at 2–3. The affidavit merely states, "[u]pon completion of the controlled purchase CI 2 provided your affiant with a quantity of narcotics portrayed to CI 2 as methamphetamine." *Id*. at 2. The affidavit recites no facts or observations about the controlled buy from either the officers who ostensibly observed the transaction or the confidential informant who bought the drugs. *See id*.

After CS-2 completed the transaction, officers followed Contreras-Aguilar to a house in Warden, Washington. *Id*. at 3. Because Contreras-Aguilar drove directly to the Warden residence, Detective Ledeboer stated that he believed there was "probable cause that your affiant will recover the MLPD controlled buy money utilized to make the controlled purchase of methamphetamine. The recorded serial numbers on the US currency from the controlled buy were M1324158737B, E1308981539A, MF22238782A, and HBI 7290977D." *Id*. at 3. The affidavit does not recite the amount or denominations of the U.S. currency used to purchase the drugs. *See id*.

Detective Ledeboer also stated that "INET detectives and members of Moses Lake Police department [were] on surveillance at [the Warden residence] and the

vehicle utilized by Contreras during the controlled purchase [was] . . . parked at the residence. Based on those factors[,] I believe it is probable that Contreras is within the residence." *Id*. The affidavit does not state whether officers observed Contreras-Aguilar entering the home. *See id*. The affidavit recites no other facts or observations about the Warden residence or Contreras-Aguilar's connection to the location. *See id*.

Detective Ledeboer obtained a search warrant for the residence. *See id*. The warrant authorized the search and seizure of:

- "The person of Jose Ignacio Contreras-Aguilar . . . Contreras is a Hispanic male, light brown hair approximately 5'06" and 160 lb,"

- "Moses Lake Police Department pre-recorded buy money bearing serial #'s MB24158737B, EB08981539A, MF22238782A, HB17290977D,"[1] and

- "Documents tending to establish dominion and control of the location to be search[ed] and of any items seized."

*Id*. at 1.

Several law enforcement agencies helped MLPD execute the search warrant. Tr. (Dec. 11, 2020). After law enforcement entered the residence, they opened a bedroom door and immediately located Contreras-Aguilar. *Id*. Detective Ledeboer

---

[1] Although the warrant and incorporated affidavit did not specify the amount or denominations of U.S. currency, Detective Ledeboer testified that they were searching for four $100 bills. Tr. (Dec. 11, 2020).

ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS – 4

gave him verbal commands to come out of the bedroom with his hands up, and he complied with those commands. *Id*. Detective Omar Ramirez testified that he handcuffed Contreras-Aguilar and escorted him outside so that the other officers could continue the initial protective sweep of the house. *Id*. According to Ramirez, Contreras-Aguilar appeared to be in shock or confused. *Id*. He was panting a bit, breathing hard, and sweating profusely, so Detective Ramirez called an ambulance. *Id*. Once a medical team arrived, they moved Contreras-Aguilar back inside the home and sat him on the couch. *Id*. Detective Ramirez searched him for weapons and found a wallet (and possibly a phone, though Detective Ramirez could not remember at the hearing). *Id*. He removed the wallet but did not initially search it for the prerecorded buy money. *Id*. Detective Ledeboer likewise testified that he did not search the wallet during the initial search incident to arrest. *Id*.

Officer Jason Mitchell searched the bedroom where officers had found Contreras-Aguilar. *Id*. He found a purple Crown Royal whiskey bag hanging on the bedroom wall—it was cinched tightly with a drawstring. *Id*. He removed it from the wall, opened it, and found a crystalline substance inside that he believed was methamphetamine. *Id*. He afterward found a zipped-up guitar case underneath the bed. *Id*. After pulling it out from underneath the bed and unzipping it, he found an assault rifle inside. *Id*. Officer Mitchell alerted Detectives Ledeboer and Ramirez that he had found these items. *Id*. Detective Ramirez photographed the items, and

Detective Ledeboer obtained an amended search warrant. *Id*.

Detectives Ledeboer and Ramirez ultimately found the prerecorded buy money in Contreras-Aguilar's wallet. *Id*. But that discovery occurred only after the search team had already found the guns, drugs, money, and other contraband. *Id*.

The parties stipulated and agreed that the following facts are true and accurate:

> During the execution of the initial search warrant on January 7, 2020, Sergeant Dean Gaddis of the Moses Lake Police Department, while searching for the items specified in the initial search warrant, found the firearm alleged in the Indictment, a Davis Industries model P-380, .380 caliber pistol, bearing serial number AP232760, in a purse located hanging on a wall. The purse also contained payments cards in the Defendant's name. The purse and firearm were found in the same bedroom where Contreras-Aguilar was discovered. The firearm was later seized pursuant to the second search warrant.

ECF Nos. 44. The parties also stipulated for the Court to decide Naranjo-Cisneros's motion to suppress without further testimony or argument. *Id*. The Court granted the parties' request and adopted their proposed stipulation. ECF No. 45.

## DISCUSSION

### A.    Motion to Suppress Evidence

Naranjo-Cisneros moves to suppress evidence based on a search and seizure in violation of the Fourth Amendment. ECF Nos. 38, 42. The Government maintains the warrant sufficiently described the items to be searched for and seized. ECF No. 40. As a fallback, the Government contends the executing officers had a

ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS – 6

right to rely on the authorized search warrant in good faith. *Id*. For the reasons discussed below, this Court concludes the warrant here failed to satisfy the Fourth Amendment's particularity requirement, and the Government's good-faith reliance argument per se fails. It therefore grants Naranjo-Cisneros's motion to suppress.

### 1.    Legal Framework

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. That right "shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id*. "The manifest purpose of this particularity requirement was to prevent general searches." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).

> By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.

*Id*. Thus, "[i]f the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional." *Horton v. California*, 496 U.S. 128, 140 (1990); *see also United States v. Becker*, 929 F.2d 442, 446 (9th Cir. 1991) ("A warranted search is unreasonable if it exceeds in scope or intensity the

terms of the warrant."); *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) ("[T]he presumptive rule against warrantless searches applies with equal force to searches whose only defect is a lack of particularity.").

The Ninth Circuit emphasizes that valid warrants require "specificity," and it engages in a two-part analysis of "particularity" and "breadth." *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (9th Cir. 2009). "Particularity means that 'the warrant must make clear to the executing officer exactly what it is that he or she is authorized to search for and seize.'" *Id.* (quoting *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 857 (9th Cir. 1991)). Breadth means the warrant's scope must be limited to the probable cause on which it is based. *SDI Future*, 568 F.3d at 702 (citation omitted). The Ninth Circuit has made clear that "particularity and overbreadth remain two distinct parts of the evaluation of a warrant for Fourth Amendment purposes." *Id*.

Evidence obtained in violation of the Fourth Amendment "often requires trial courts to exclude [the] unlawfully seized evidence in a criminal trial." *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016) (citing *Mapp v. Ohio*, 367 U.S. 643, 655 (1961)). The exclusionary rule applies to "evidence obtained as a direct result of an illegal search or seizure" and "evidence later discovered and found to be derivative of an illegality, the so-called fruit of the poisonous tree." *Id.* (citation and internal quotation marks omitted). That said, courts have "recognized several exceptions to

the rule." *Id*.

One exception involves "good faith reliance." *SDI Future*, 568 F.3d at 705 (citing *United States v. Leon*, 468 U.S. 897, 925 (1984)). Thus, when "'police conduct is pursued in complete good faith, the [exclusionary] rule's deterrent function loses much of its force,'" and it need not apply. *Id*. at 706 (alteration added) (quoting *United States v. Luong*, 470 F.3d 898, 902 (9th Cir. 2006)). The good-faith reliance exception is an objective test, and "the government bears the burden of proving that officers relied on the search warrant in an objectively reasonable manner." *Id*. (citations and internal quotation marks omitted).

In *Leon*, the Supreme Court "identified four situations that *per* se fail to satisfy the good faith exception." *United States v. Underwood*, 725 F.3d 1076, 1085 (9th Cir. 2013). "In these situations, 'the officer will have no reasonable grounds for believing that the warrant was properly issued.'" *Id*. (quoting *Leon*, 468 U.S. at 922–23).

> The four situations are: (1) where the affiant recklessly or knowingly placed false information in the affidavit that misled the issuing judge; (2) where the judge "wholly abandon[s] his [or her] judicial role"; (3) where the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."

*Id*. (quoting *Leon*, 468 U.S. at 922–23). "If any of these four situations apply," courts "'need not inquire further' and can conclude that the good faith exception to

ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS – 9

the exclusionary rule does not apply." *Id*. (quoting *Luong*, 470 F.3d at 905).

### 2.    Particularity

Naranjo-Cisneros argues the facts and law in *Contreras-Aguilar* apply here and asks this Court to adopt a similar rationale. ECF No. 38 at 2–3. This Court agrees.

To begin with, the Court agrees with the Government that the search warrant incorporated the attached affidavit. ECF No. 40 at 6. The Court recognizes that the affidavit specified that the prerecorded buy money was U.S. currency and included the buy money's prerecorded serial numbers. *See generally* ECF No. 40-1 at 1–3. The Court nevertheless concludes the warrant failed to satisfy the Fourth Amendment's particularly requirement.

*SDI Future Health* helps explain this issue. *See generally* 568 F.3d 684. There, the Ninth Circuit had no problem establishing the particularity of the warrant because "even the most troubling items on the list, such as '[r]olodexes, address books and calendars,' are particular in that they 'enable the person conducting the search reasonably to identify the things authorized to be seized.'" *Id*. (quoting *United States v. Smith*, 424 F.3d 992, 1004 (9th Cir. 2005)). The court determined, "The officers could tell from the warrant that, should they happen upon a rolodex, they should seize it." *Id*. "Because the warrant was not vague as to what it directed law enforcement officers to search for and to seize, we are satisfied that it did not

lack particularity for Fourth Amendment purposes." *Id*.

This case is unlike *SDI Future Health* on this point. As for the prerecorded buy money, the warrant did not specify the amount or denominations of the bills subject to seizure. Had the warrant specified that there were only four $100 bills bearing particular serial numbers, it would have properly limited the scope of the search to only four $100 bills bearing particular serial numbers. It also would have informed law enforcement to seize only four $100 bills bearing particular serial numbers. *SDI Future Health*, 568 F.3d at 702. Here, law enforcement could not tell from the warrant which denominations of U.S. currency they should search for and seize. *See id*.

A warrant authorizing a general search for all denominations of U.S. currency (and requiring officers to review all the U.S. currency found for the correct serial numbers) was not sufficiently particular because limiting the scope of the search to only the four $100 bills bearing the particular serial numbers was not only possible but easily achievable. *See SDI Future Health*, 568 F.3d at 702 ("'Warrants which describe generic categories of items are not necessarily invalid if a more precise description of the items subject to seizure is not possible.'") (quoting *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986)). There was no need to authorize a search for all denominations of bills because "the government knew exactly what it needed and wanted." *See VonderAhe v. Howland*, 508 F.2d 364, 370 (9th Cir. 1974).

This Court can only surmise that law enforcement omitted the denominations of the bills from the warrant due to carelessness or to broaden the scope of the search. In either event, that error rendered the warrant fatally flawed.

In determining whether a warrant is sufficiently particular, the Ninth Circuit has outlined three factors for consideration:

> (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.

*United States v. Adjani*, 452 F.3d 1140, 1148 (9th Cir. 2006) (quoting *Spilotro*, 800 F.2d at 963). The factors identified in *Adjani* largely track the precedent recognized in *SDI Future Health*, 568 F.3d at 702. But for the sake of thoroughness, this Court will address the *Adjani* factors as well. Here, probable cause did not exist to search for and to seize all U.S. currency; it existed to search for and to seize only the four $100 bills bearing particular serial numbers used to complete the controlled buy. Law enforcement knew the exact description of the money used in the controlled buy. Yet the warrant and incorporated affidavit failed to identify the denominations of bills. While that failure may not have affected the U.S. currency ultimately subject to seizure (only the four $100 bills bearing the particular serial numbers), omitting the denominations of the bills improperly broadened the scope of the

*search*. As a result, the warrant broadly authorized a general, exploratory search for all denominations of U.S. currency to determine whether such currency bore the correct serial numbers. The Government could have easily described the U.S. currency subject to seizure more particularly given the information available to it when the warrant was issued. *See Adjani*, 452 F.3d at 1148. For these reasons, the Court finds the warrant failed to satisfy the particularity requirement.

The same is true for the general authorization allowing for the search and seizure of "[d]ocuments tending to establish dominion and control of the location to be search[ed] and of any items seized." ECF No. 28-1 at 1. This authorization invites two categories of questions.

First, which types of documents should law enforcement be searching for and seizing to establish dominion and control of the premises? A title? A lease? Mail? Perhaps identification cards bearing the premises' address?

Second, which types of documents should law enforcement be searching for and seizing to establish dominion and control of the prerecorded buy money? Perhaps a paper ledger documenting the drug sale? But what if Contreras-Aguilar kept an electronic ledger? The warrant appears to authorize the search for bookkeeping documents, so could law enforcement seize any computers it happened upon? What about phone records documenting the transaction? Depending on how one reads the warrant, it seems to authorize the seizure of phones as well.

In Washington, the concept of dominion and control generally relates to the concept of constructive possession:

> To determine constructive possession a court examines whether, under the totality of the circumstances, the defendant exercised dominion and control over the item in question. While the ability to immediately take actual possession of an item can establish dominion and control, mere proximity to the item by itself cannot. Factors supporting dominion and control include ownership of the item and, in some circumstances, ownership of the premises. But, having dominion and control over the premises containing the item does not, by itself, prove constructive possession.

*State v. Davis*, 340 P.3d 820, 827 (Wash. 2014) (citations omitted). But the circumstantial nature of the constructive possession standard begets the vagueness of the authorization in this warrant, a vagueness which the Fourth Amendment does not tolerate.

The Court disagrees with the Government's arguments about the broad category of unspecific documents subject to seizure under the dominion and control authorization. Contrary to the Government's view, a warrant cannot give law enforcement unfettered discretion (however reasonably executed) to determine which items are subject to seizure. *See Adjani*, 452 F.3d at 1148; *SDI Future Health*, 568 F.3d at 702 ("A warrant must . . . give clear instructions to a search team."); *accord United States v. Zemlyansky*, 945 F. Supp. 2d 438, 453 (S.D.N.Y. 2013) (quoting *United States v. Riley*, 906 F.2d 841, 844 (2d Cir. 1990) ("Courts implement the particularity requirement by insisting that warrants not 'leave to the

unguided discretion of the officers executing the warrant the decision as to what items may be seized.'"). The warrant at issue provided no "objective standards by which executing officers [could] differentiate [which dominion and control documents were] subject to seizure from those which [were] not." *See Adjani*, 452 F.3d at 1148. The authorization here was not only vague but overbroad. And the Government could have easily described the dominion and control documents subject to seizure more particularly given the information available to it when the warrant was issued. *See id*.

In *Spilotro*, for example, the "warrant authorized, among other things, the seizure of address books, notebooks, notes, documents, records, assets, photographs, and other items and paraphernalia evidencing violations of the multiple criminal statutes listed." 800 F.2d at 964. There, "[t]he government did not know, or at least did not recite, the precise identity, type, or contents of the records sought." *Id*. The Ninth Circuit determined "a more precise description of the items sought was possible," and the "warrant should have named or described those particular items." *Id*. "For instance, the warrant might have authorized the seizure of records relating to loan sharking and gambling, including pay and collection sheets, lists of loan customers, loan accounts and telephone numbers, line sheets, bet slips, tally sheets, and bottom sheets." *Id*. (citation and internal quotation marks omitted).

This case is like *Spilotro*. Here, the general authorization allowed for the search and seizure of "[d]ocuments tending to establish dominion and control of the location to be search[ed] and of any items seized." ECF No. 40-1 at 1. As for documents establishing dominion and control of the premises, the warrant might have authorized, for example, the seizure of titles, leases, mail, identification cards, and the like. As for documents establishing dominion and control of the prerecorded buy money, the warrant might have authorized the seizure of paper or electronic ledgers documenting the drug sale or phone records documenting the drug sale with the confidential informant. Like *Spilotro*, 800 F.2d at 964, a more precise description of the dominion and control documents that law enforcement sought was possible, and the "warrant should have named or described those particular items." *Id*. "By failing to describe with any particularity the [types of documents] to be seized, the warrant is indistinguishable from the general warrants repeatedly held by this court to be unconstitutional." *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995) (alteration added).

Here, the warrant authorizes 'a general, exploratory rummaging' of the *entire* house for any documents the officers might think satisfies the constructive possession standard. *See SDI Future Health*, 568 F.3d at 705. Unlike the Rolodexes, address books, and calendars in *SDI Future Health*, 568 F.3d at 702, the warrant here does not identify any specific types of documents. Instead, the warrant gives

ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS – 16

law enforcement discretion about which documents to search for and seize, and officers must make a legal determination about whether the particular document they happen upon "establish[es] dominion and control of the location to be search[ed] and of any items seized." ECF No. 28-1 at 1; *cf. SDI Future Health*, 568 F.3d at 702. Again, a more precise description of the documents subject to seizure was possible. *See SDI Future Health*, 568 F.3d at 702.

Because the warrant was vague about the prerecorded buy money and the documents subject to seizure, this Court concludes it failed to satisfy the Fourth Amendment's particularity requirement. *Cf. SDI Future Health*, 568 F.3d at 702.

### 3.    Overbreadth

As for overbreadth, a warrant must give law enforcement clear instructions, and those instructions must not be overbroad. *SDI Future Health*, 568 F.3d at 702. That means probable cause must exist to seize the particular things named in the warrant. *Id*. And "'probable cause means a fair probability that contraband or evidence of a crime will be found in a particular place, based on the totality of circumstances.'" *Id*. at 703 (quoting *United States v. Diaz*, 491 F.3d 1074, 1078 (9th Cir. 2007)); *see also Illinois v. Gates*, 462 U.S. 213, 238 (1983) (reaffirming "the totality-of-the-circumstances analysis that traditionally has informed probable cause determinations.").

After completing the controlled buy, law enforcement tailed the vehicle

driven by Contreras-Aguilar to a home in Warden. ECF No. 28-1. Because

Contreras-Aguilar drove directly to this home, Detective Ledeboer believed there

was probable cause to search the house to recover the prerecorded buy money. *Id*.

The state district court judge found probable cause to believe that:

> Evidence or fruits of the crime [Violation of the Uniform Controlled
> Substances Act]/[Failure to Appear for Driving Under the Influence];
> and/or contraband or things otherwise criminally possessed; and/or
> weapons or other things by means of which a crime has been or is about
> to be committed, are located within <u>Grant</u> County, Washington, in or
> about the premises, vehicle, or other place, or upon the person of the
> individuals described below[.][2]

*Id*. But the state district court failed to analyze the totality of circumstances in any

detail. *See id*.

Reviewing courts generally afford "great deference" to a judge's probable

cause determination. *Leon*, 468 U.S. at 914. But that deference "is not boundless,"

and "reviewing courts will not defer to a warrant based on an affidavit that does

not 'provide the magistrate with a substantial basis for determining the existence

of probable cause.'" *Id*. at 914–15 (quoting *Gates*, 462 U.S. at 239). "Sufficient

information must be presented to the magistrate to allow that official to determine

probable cause; his action cannot be a mere ratification of the bare conclusions of

---

[2] Despite the state district court judge's findings, Detective Ledeboer, who applied
for the search warrant, testified that probable cause did not initially exist to seek a
warrant authorizing the search and seizure of either firearms or controlled
substances. Tr. (Dec. 11, 2020).

ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS – 18

others." *Id*. at 915 (quoting *Gates*, 462 U.S. at 239). If a judge's probable cause determination fails to properly analyze the totality of the circumstances, a reviewing court may find the warrant invalid. *Id*. Courts must review a warrant "keeping in mind the warrant's incorporation of the affidavit." *SDI Future Health*, 568 F.3d at 702.

Given the totality of the circumstances, this Court agrees probable cause existed to search for and to seize Contreras-Aguilar. But this Court disagrees that the warrant and attached affidavit established probable cause to search the premises for the prerecorded buy money and the documents establishing dominion and control. *But see* ECF No. 40-1. This Court finds the state district court judge merely ratified the unsupported conclusions of the lead detective in this case. *See Leon*, 468 U.S. at 914.

The only link to the residence described in the warrant involves the fact that Contreras-Aguilar drove there after selling the drugs to the confidential informant. *See* ECF No. 28-1. Yet the controlled buy happened at a different location.[3] *See id*. No controlled buys had been performed at this residence. Detective Ledeboer confirmed that his affidavit did not state that drug dealing was occurring at the

_____

[3] The bare bones nature of the affidavit leaves the Court guessing about many details that officers likely had at their fingertips. For example, the affidavit recites no facts or observations about the location of the controlled buy. The affidavit also recites no facts or observations about what Contreras-Aguilar did with the buy money immediately after receiving it.

ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS – 19

1    residence. Tr. (Dec. 11, 2020). The informant did not notify law enforcement that

2    Contreras-Aguilar was selling drugs out of the residence. *See* ECF No. 28-1. No

3    drug transactions had been observed at the residence. *See id*. No criminal activity

4    or odd behavior had been observed at the residence. *See id*. No evidence established

5    that Contreras-Aguilar even entered the residence. *See id*. Without more, Contreras-

6    Aguilar's ostensible presence does not support probable cause to search the house

7    for money and documents.

8        In truth, "[n]o facts are recited from which it could be inferred that

9    [Contreras-Aguilar was] other than [a] casual social guest[] at the residence." *See*

10   *United States v. Bailey*, 458 F.2d 408, 412 (9th Cir. 1972); *see also Greenstreet v.*

11   *Cnty. of San Bernardino*, 41 F.3d 1306, 1309 (9th Cir. 1994) ("Merely stating that

12   [defendant] was surveilled to [a] residence, without any other information as to his

13   activities [at that residence], 'is not sufficient to permit an inference' that

14   [defendant] was other than a 'casual social guest' at [that] residence.") (alterations

15   added) (quoting *Bailey*, 458 F.2d at 412).

16       Again, the affidavit makes no connection between criminal activity for which

17   Contreras-Aguilar was under investigation and the Warden residence besides saying

18   that officers followed Contreras-Aguilar to the residence after the controlled buy.

19   *Cf. Greenstreet*, 41 F.3d at 1309–10. Just because probable cause existed to seize

20   the Contreras-Aguilar from within the residence, that does not mean probable cause

ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS – 20

existed over the "location to be searched." *See* ECF No. 40-1 at 1. Contreras-Aguilar could have been there for many reasons, and the affidavit does not support an inference that he stashed the controlled buy money in some hidden location within the house. *See Greenstreet*, 41 F.3d at 1309–10. As this Court may infer that Contreras-Aguilar was only a "casual social guest," probable cause existed to seize him from the residence and to search his person. *See id.* Had the officers not found the prerecorded money during the search incident to arrest, that may have supported a reasonable inference (i.e., a fair probability) that the prerecorded buy money was somewhere else, like the house or the vehicle. As it turned out, the prerecorded buy money *was* on his person; it was in his wallet. But law enforcement only discovered the prerecorded buy money after first conducting a general, exploratory search of the entire house for money and documents.

The Government argues nothing requires proof that Contreras-Aguilar lived at the residence, citing *United States v. Crews*, 502 F.3d 1130, 1137 (9th Cir. 2007) (finding that the good-faith reliance exception applied and declining to address whether the affidavit demonstrated that Crews was anything but a casual social guest)). That may be true, but *Crews* relied on the "good faith" exception to the probable cause requirement without "embarking on the exercise of determining whether the affidavit supported probable cause." *See* 502 F.3d at 1136. "[C]ourts have discretion in deciding whether to address the issue of probable cause before

turning to the issue of good faith reliance." *Id.* In this case, this Court exercises its

discretion and finds, like *Greenstreet*, that the affidavit did not provide a substantial

basis for the state district court judge's conclusion that the affidavit supported

probable cause to search residence. *Cf. Greenstreet*, 41 F.3d at 1309 (holding that

the surveillance evidence only permits an inference that defendant was a "casual

social guest" of the residence). Given the bare-bones facts, the totality of

circumstances did not support a fair probability that contraband or evidence of a

crime would be found anywhere other than on Contreras-Aguilar's person.

This Court therefore concludes the warrant was overbroad because probable

cause did not exist to search the house. ECF No. 28-1. True, in executing the search

warrant for Contreras-Aguilar, law enforcement could search the immediate vicinity

of where he was found for safety purposes and seize any guns, drugs, or money in

plain view.[4] But that is not what happened here. The officers searched for and seized

Contreras-Aguilar and then commenced a general, exploratory search of the house

---

[4] Under the plain view doctrine, another exception to the exclusionary rule involves "the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character." *Horton*, 496 U.S. at 135; *see also United States v. Tamura*, 694 F.2d 591, 595 n.1 (9th Cir. 1982) (similarly noting that one exception to the particularity requirement involves "the seizure of contraband or other incriminating evidence found inadvertently during the execution of a search warrant.").

for money and documents.[5] Because this Court finds the warrant failed to establish probable cause over the "location to be searched," *see* ECF No. 40-1 at 1, the officers did not reasonably search for and seize "the firearm alleged in the Indictment [against Naranjo-Cisneros], a Davis Industries model P-380, .380 caliber pistol, bearing serial number AP232760, [found] in a purse located hanging on a wall." *See* ECF Nos. 44, 45.

### 4.    Good-Faith Reliance Exception

The Government argues that the officers relied in good faith on the judicially approved search warrant, so the exclusionary rule should not apply. ECF No. 40. Naranjo-Cisneros identifies two situations in which the warrant and affidavit here per se fail to satisfy the good-faith exception, and, as a result, law enforcement had no reasonable grounds for believing that the warrant was properly issued. *See* ECF Nos. 38, 41.

Naranjo-Cisneros first urges the Court to adopt the rationale it expounded in *Contreras-Aguilar*, in which this Court concluded the warrant was facially deficient. *See id*. In the alternative, Naranjo-Cisneros insists the affidavit here was

---

[5] On cross-examination, defense counsel asked Officer Mitchell about the dominion and control authorization in the search warrant: "do you interpret that to mean that you could search the entire house for documents demonstrating dominion and control?" *Id*. He replied, "Wherever dominion and control documents may be located, which they could be located anywhere, just the same as US currency could be located anywhere." *Id*.

ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS – 23

so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *See id*. Despite the bare-bones facts in the affidavit, because this Court maintains its rationale regarding facially deficiency, it declines to reach Naranjo-Cisneros's alternative theory.

As stated above, the Supreme Court has "identified four situations that *per se* fail to satisfy the good faith exception," including when "the warrant is 'so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.'" *Underwood*, 725 F.3d at 1085 (quoting *Leon*, 468 U.S. at 923). "Given that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid." *Groh v. Ramirez*, 540 U.S. 551, 563 (2004). The warrant here plainly did not comply with the particularity requirement—it was both vague and overbroad. Because this Court finds the warrant here facially deficient and thus by implication, no objective officer could reasonably presume it to be valid, it concludes the Government's argument per se fails. *See also United States v. Stubbs*, 873 F.2d 210, 212 (9th Cir. 1989) (holding because the warrant was facially invalid, law enforcement could not have reasonably relied on it in good faith); *United States v. Washington*, 797 F.2d 1461, 1473 (9th Cir. 1986) (holding because two sections of the warrant were overbroad, that rendered the warrant so facially deficient that

1  any evidence obtained relying on either of them must be suppressed).

2  The Government directs this Court to *United States v. King*, No. 20-10007,

3  2021 WL 127828 (9th Cir. Jan. 14, 2021), which cites a few cases discussing the

4  good-faith reliance standard. But *King* helps the Government little.

5  *King* affirmed the district court's ruling denying defendant's motion to

6  suppress because it concluded the warrant was supported by probable cause and

7  was sufficiently particular. *See generally id*. It also held "the good-faith exception .

8  . . justifies denying the suppression motion here." *Id*. at *5.

9  First, this Court finds *King* distinguishable. There, law enforcement was

10  investigating a suspect after a serious domestic-violence incident in which the

11  suspect pointed an unloaded gun at the victim's head and pulled the trigger, grabbed

12  a box of ammunition while the victim fled, and then chased the victim down and

13  struck her face. *Id*. at *1. The victim provided information to the police about the

14  suspect and the gun. *Id*. Afterward, law enforcement overheard a jailhouse

15  conversation in which the suspect essentially told the victim to give the gun to King.

16  *See id*. at *2. The victim admitted to law enforcement that she gave the gun to King,

17  and "described his appearance and phone number, the location of his house, his live-

18  in girlfriend, and his vehicles." *Id*. Because of King's two prior felonies, law

19  enforcement determined he was barred from possessing firearms. *Id*. "[O]fficers

20  observed King's car parked at his residence—the place where the victim said she

ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS – 25

delivered the firearm." *Id*. "A judge then authorized the warrant, allowing the search of King's home for '[a]ny firearm' and various other firearm-related items." *Id*.

This case is factually more like *Greenstreet*, 41 F.3d at 1309–10, than *King*. The victim in *King* told police that she delivered the firearm to King's house— where he lived. *See id*. Unlike the victim in *King*, the confidential informant here did not relay any information about the Warden residence to law enforcement. Law enforcement merely followed Contreras-Aguilar to the residence after the controlled buy.

Turning to the good-faith reliance exception, *King* cites *Kow*, 58 F.3d 423, *Davis v. United States*, 564 U.S. 229 (2011), and *Leon*, 468 U.S. 897 for the standards governing the exception. While this Court bases its decision on the controlling rule emanating from *Leon*, it finds further discussion of *Kow* will prove useful.

"Evidence seized pursuant to a facially valid search warrant which later is held to be invalid may nevertheless be admissible if officers conducting the search acted in good faith and in reasonable reliance on the warrant." *Kow*, 58 F.3d at 428 (citing *Leon*, 468 U.S. at 926). "The government bears the burden of proving that reliance upon the warrant was objectively reasonable." *Id*.

In *Kow*, "the warrant . . . listed entire categories of documents to be seized, encompassing essentially all documents on the premises." *Id*. at 428. The Ninth

Circuit noted that it has been "'vigilant in scrutinizing officers' good faith reliance on such illegally overbroad warrants.'" *Id*. (quoting *Ortiz v. Van Auken*, 887 F.2d 1366, 1370 (9th Cir. 1989)). It emphasized, "[t]he warrant in this case is less particular than the warrant in *Stubbs*, which also authorized seizure of 'broad classes of documents without specific description of the items to be seized.'" *Id*. (quoting *Stubbs*, 873 F.2d at 212). *Kow* held, "Because the warrant in this case was facially invalid, no reasonable agent could have relied on it absent some exceptional circumstance." *Id*. at 428–29 (citation and internal quotation marks omitted). "The mere fact that the warrant was reviewed by two AUSA's [sic] and signed by a magistrate does not amount to 'exceptional circumstances.'" *Id*. at 429. Further, "[w]hen a warrant is facially overbroad, absent *specific assurances* from an impartial judge or magistrate that the defective warrant is valid despite its overbreadth, a reasonable reliance argument fails." *Id*. (emphasis in original).

This case is like *Kow*. The warrant here authorized the seizure of a broad category of dominion and control documents without a specific description of the items to be seized. *See id*. at 428 (discussing *Stubbs*, 873 F.2d at 212). It also vaguely described the prerecorded buy money subject to seizure when providing the exact description of the buy money was possible. *See id*. at 427 ("[G]eneric classifications in a warrant are acceptable only when a more precise description is not possible."). Law enforcement here knew exactly what they were looking for.

*See VonderAhe*, 508 F.2d at 370. Although a state district court judge signed the warrant, which the lead detective drafted, that fact does not qualify as exceptional circumstances. *See Kow*, 58 F.3d at 429. And because the warrant here was facially overbroad, and there were no *specific assurances* from an impartial judge or magistrate that the defective warrant was valid despite its overbreadth, the Court finds the Government has not met its burden of proving that reliance on the warrant was objectively reasonable. *See id*. at 428. For these reasons, the Government's good-faith reliance argument fails.

### 5.    Remedy

The Ninth Circuit endorses the doctrine of severance, allowing district courts to exclude evidence that fails to satisfy the Fourth Amendment from evidence properly searched for and seized. *SDI Future Health*, 568 F.3d at 707. "'Total suppression, on the other hand, is appropriate when a warrant is wholly lacking in particularity.'" *Id*. (quoting *United States v. Sears*, 411 F.3d 1124, 1129 (9th Cir. 2005)). This Court finds the initial warrant overbroad and wholly lacking in particularity. As a result, it determines total suppression is the proper remedy and excludes all the evidence seized pursuant to both warrants as fruit of the poisonous tree.

//

//

1

**CONCLUSION**

2    In sum, the warrant and incorporated affidavit violated the Fourth

3    Amendment's particularity requirement, and Government has not met its burden of

4    proving good-faith reliance. This Court concludes total suppression is the proper

5    remedy and excludes all the evidence seized pursuant to both warrants as fruit of

6    the poisonous tree.

7    Accordingly, **IT IS HEREBY ORDERED**:

8    Defendant Martha Ofelia Naranjo-Cisneros's Motion to Suppress

9    Evidence Based on a Search & Seizure in Violation of the Fourth

10    Amendment, **ECF No. 38**, is **GRANTED**.

11    **IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and

12    provide copies to all counsel.

13    **DATED** this 11th day of February 2021.

14

15    _____

16    SALVADOR MENDOZA, JR.
      United States District Judge

17

18

19

20